# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL NELSON** | ) | |
| **# 512858,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:17-cv-01270 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| **TONY PARKER**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# M E M O R A N D U M

Daniel Nelson, an inmate at the Morgan County Correctional Complex in Wartburg, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Tony Parker, Shawn Phillips, Gary Hamby, Dr. f/n/u O'Connor, Dr. f/n/u O'Toole, f/n/u Riggins, and Ace Glaspy, alleging violations of his civil rights. (Docket No. 1).

**I.    PLRA Screening Standard**

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

1

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**II.     Section 1983 Standard**

The plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color

2

of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

### III. Alleged Facts

According to the complaint, the plaintiff is designated as a "Level 3 Mental Health" inmate. Tennessee Department of Correction ("TDOC") Policy # 113.87 dictates that Level 3 Mental Health inmates are to be afforded at least four hours of "out of cell" time each day. While incarcerated at the Morgan County Correctional Complex, the defendants do not honor this policy and keep the plaintiff in his cell for twenty-three hours each day. As a result, the plaintiff's mental health is deteriorating. The complaint also alleges that the plaintiff's assigned unit is isolated, "feces filled[,] and bloody." (Docket No. 1 at 5).

### IV. Analysis

#### A. Defendant with no alleged personal involvement

First, although the plaintiff names Tony Parker as a defendant to this action, the plaintiff has not alleged any specific personal involvement by Parker in the events described in the complaint. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller v. Calhoun Cnty.,* 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and the plaintiff here has failed to do so with regard to Parker. The plaintiff's claims against Parker appear to be based solely on his role as Commissioner of the Tennessee Department of Correction. Thus, the plaintiff's claims against Parker must be dismissed.

#### B. TDOC policy violations

The complaint alleges that the defendants are not following TDOC Policy # 113.87 in violation of the plaintiff's due process rights. However, alleged violations of such policies are not actionable under § 1983. *See Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995)(stating that, after

*Sandin*, it became clear that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015); *Levine v. Torvik*, 986 F.2d 1505, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Consequently, the court finds that the complaint fails to state a due process claim arising from any defendants' failure to follow TDOC policies.

C.  **Eighth Amendment claims**

Next, the complaint alleges that the conditions of the plaintiff's confinement constitute cruel and unusual punishment. Specifically, the complaint alleges that Dr. O'Toole, Dr. O'Connor, Warden Hamby, Warden Phillips, Ace Glasby, and Riggins have worked together to keep the plaintiff in his cell for twenty-three hours a day, even though as a Level 3 Mental Health inmate, he should be permitted time outside of his cell for four hours each day. (Docket No. 1 at 5). The complaint further alleges that the plaintiff's unit is contaminated with feces and blood. (Docket No. 1 at 5). According to the plaintiff, his living conditions and failure to be outside of his cell more often have caused his mental health to deteriorate. (*Id.*)

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)(collecting cases); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

The Eighth Amendment protects against conditions of confinement that constitute serious health

4

or safety threats, but not against those that cause mere discomfort or inconvenience. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). An inmate "cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988), *quoted in Thaddeus–X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). While prison conditions may be "restrictive and even harsh," they do not violate the constitution unless they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam).

In the context of a conditions of confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For challenged conditions to qualify as extreme, they must have resulted in "the deprivation of [at least one] identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The plaintiff's allegations about the lack of cleanliness in his unit, combined with the fact that the plaintiff is only allowed out of his cell for one hour each day, may rise to that level. *See Hamby v. Hall,* No. 3:13-cv-181, 2013 WL 1809871, at *3 (M.D. Tenn. Apr. 29, 2013)(prisoner's allegation that non-suicidal but otherwise mentally ill inmates are placed in isolation cells for twenty-three hours every day, and are allowed only one hour of 'roof rec' shackled in a cage on the roof of the CJC . . . indicate that the mental health needs of these inmates are being treated with deliberate indifference and/or that the inmates have been subjected to cruel and unusual punishment in violation of their Eighth Amendment rights."); *Easley v. Nixon-Hughes,* No. 1:06cv863, 2009 WL 237733, at **1,3 (S.D. Ohio Jan. 29, 2009)(denying defendants' motion to dismiss on grounds that

plaintiff's allegations that "he is being denied adequate treatment for his mental illness and is being punished for being mentally ill by being placed in a '23-1 hour isolation' cell with 'supermax' conditions" failed to state a deliberate indifference claim under § 1983).

Further, in the Eighth Amendment context, "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994). Besides the long-standing legal requirement of an "injury" in case law concerning prisoner complaints, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the PLRA, a lawsuit brought by an institutionalized person requires a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 Fed.Appx. 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). The court finds that, for purposes of the PLRA screening, the allegations of the complaint are sufficient to satisfy the requirement for an injury arising from the lack of sanitation in the plaintiff's cell and the prohibition against exiting the plaintiff's cell for more than one hour each day. Therefore, the Plaintiff has stated an Eighth Amendment claim in this regard against defendants O'Toole, O'Connor, Hamby, Phillips, Glasby, and Riggins in their individual capacities.

V. **Motion for Temporary Restraining Order and Injunctive Relief**

After the filing of his complaint, the plaintiff filed a motion for a temporary restraining order and injunctive relief (Docket No. 3) in which he asks the court to enter a motion restricting the

defendants from coming within 1000 feet of the plaintiff "as to protect the 1) integrity of the case via plaintiff[']s safety from retaliation/orchestrations[;] 2) to deter harassment of plaintiff[;] 3) to halt possible, incoming obstruction of case (i.e., so no one steals the plaintiff['] legal paper, or mail, etc.)[;] 4) to deter the defendants from collusion, and to deter retaliatory tactics by defendants . . . ." (*Id.* at 1-2). The plaintiff also requests that the court transfer the plaintiff to another facility "to protect the integrity of case, and plaintiff['] well being." (*Id.* at 2).

Federal Rule of Civil Procedure 65 governs the court's power to grant injunctive relief, including temporary restraining orders without notice. *Fed. R. Civ. P.* 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, where "a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

In determining whether to issue a temporary restraining order or preliminary injunction under

Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a TRO or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).

In this case, a careful balancing of the factors weighs against granting the plaintiff's request for a temporary restraining order and injunctive relief. First, the plaintiff's likelihood of success on his claims is no greater than the defendants' likelihood at this stage of the proceedings. Under controlling Sixth Circuit authority, the plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). As to the plaintiff's request to be transferred to a different facility, the court does not have the authority to supervise state classification and assignment of inmates. An inmate in state custody does not have a protected right to be housed in a particular institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)(superseded by statute on other grounds); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Further, keeping in mind that the plaintiff's motion asks for the court to transfer him to another facility and to prohibit the defendants from coming with 1000 feet of the plaintiff – not to permit the plaintiff greater time outside of his cell each day–the court finds that the plaintiff has failed to meet his "initial burden" of showing a strong

8

or substantial likelihood of success on the merits.

With regard to the second factor, the plaintiff asks for the temporary restraining order and injunction because he fears that the defendants will harass him, steal his mail or legal papers, or otherwise obstruct his case. (Docket No. 3 at 1). However, these fears have not been realized; while the plaintiff alleges that these defendants "have a documented history of theft of legal work/mail and putting staff (and/or inmates) against plaintiffs to deter litigation of constitutional rights violation[s]" (*id.* at 2), the plaintiff has not provided any evidence to support his allegations. Injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

Third, a temporary restraining order in this situation could cause substantial harm to others, in that it would remove from prison officials the deference that they are generally afforded in the administration and control of the prison. Decisions concerning the administration of prisons are vested in prison officials in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive. *See Griffin v. Berghuis*, 563 Fed.Appx. 411, 417–18 (6th Cir. 2014) (citing *Turner v. Safley*, 482 U.S. 78, 82 (1987)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3 (6th Cir. 1984).

Finally, as to the public-interest factor, if the court granted the plaintiff the requested preliminary injunction, the court would effectively be restricting the movements of corrections officers in their own penal institution. The court finds that such a determination would not serve the public interest. *See Glover*, 855 F.2d at 284 (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to

9

administer any portion of a state correctional system program except in the most compelling situations").

For these reasons, the court will deny the plaintiff's motion for a temporary restraining order and injunctive relief.

**VI.    Conclusion**

As set forth above, the court finds that the complaint states colorable Eighth Amendment claims against defendants O'Toole, O'Connor, Hamby, Phillips, Glasby, and Riggins in their individual capacities pursuant to § 1983. 28 U.S.C. § 1915A. These claims survive the required PLRA screening. However, the plaintiff's remaining claims will be dismissed for failure to state claims upon which relief can be granted. 28 U.S.C. § 1915A. In addition, the plaintiff's motion for a temporary restraining order and injunctive relief will be denied.

An appropriate order will be entered.

ENTER this 8th day of March 2018.

_____
Aleta A. Trauger
United States District Judge